# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 6D2025-1027
Lower Tribunal No. 2024-CA-006705

———————————————

ERIK BYSTRAK, LPN, CITRUS AMBULATORY SURGERY CENTER, INC., and AMSURG, LLC,

Petitioners,

v.

DAHLIA MCLEAN,

Respondent.

———————————————

Petition for Writ of Certiorari to the Circuit Court for Orange County.
Margaret H. Schreiber, Judge.

October 6, 2025

MOE, A.G., Associate Judge.

Petitioners Erik Bystrak, LPN ("Nurse Bystrak"), Citrus Ambulatory Surgery Center, Inc. ("CASC"), and AmSurg, LLC (collectively, the "Providers") invoke our certiorari jurisdiction and request that we quash the order denying their Motion to Dismiss Plaintiff's Complaint for Failure to Comply with the Presuit Requirements or, in the Alternative, Motion to Determine Sufficiency of Plaintiff's Presuit Investigation and Motion to Dismiss Plaintiff's Complaint. We have jurisdiction. Art. V, § 4(3), Fla. Const. Because the trial court departed from the essential

requirements of the law in denying the motion to dismiss as to Nurse Bystrak, we grant the petition and quash the order denying the motion to dismiss.

## I.

After a colonoscopy in June 2022, Dahlia McLean alleges that she was left alone to dress herself while she was still under the effects of a sedative, and she fell. She alleges that Nurse Bystrak left her alone and the fall took place at a surgery center operated by CASC and AmSurg.

In June 2024, Ms. McLean filed a complaint alleging medical negligence against the Providers. The Providers moved to dismiss, alleging that Ms. McLean failed to comply with the presuit requirements of sections 766.106 and 766.203, Florida Statutes (2024).

In response, Ms. McLean argued that the Providers waived compliance with the presuit requirements because CASC and AmSurg failed to comply with her request for medical records, as provided by Chapter 766. The Providers argued that no failure on the part of CASC or AmSurg can be imputed to Nurse Bystrak, and in any event the statute does not provide that the failure to produce records waives all presuit requirements. After a hearing, the trial court denied the motion to dismiss and directed the Providers to respond to the complaint. The Providers then petitioned for a writ of certiorari.

## II.

A petitioner seeking certiorari relief after the denial of a motion to dismiss must establish (1) that the trial court departed from the essential requirements of the law, (2) a material injury for the remainder of the case, and (3) that the injury cannot be corrected on a postjudgment appeal. *Williams v. Oken*, 62 So. 3d 1129, 1132 (Fla. 2011). Certiorari review is appropriate to ensure that the procedural aspects of Chapter 766 are met. *Id.* at 1137; *but see* Fla. R. App. P. 9.130(a)(3)(H) (treating denial of motion to dismiss on the basis of a corroborating expert's qualifications as an appealable non-final order).

## III.

Florida has enacted a comprehensive statutory scheme governing medical malpractice cases. In that statutory scheme, section 766.104(1), Florida Statutes (2024), provides that "[n]o action shall be filed for personal injury or wrongful death arising out of medical negligence . . . unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." The same subsection provides that counsel filing a complaint for medical malpractice must certify "that such reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named defendant" and, "[f]or purposes of this section, good faith may be shown to exist if

the claimant or his or her counsel has received a written opinion, which shall not be subject to discovery by an opposing party, of an expert as defined in s. 766.102 that there appears to be evidence of medical negligence." § 766.104(1).

Chapter 766 requires that a medical malpractice claimant "conduct an investigation to ascertain that there are reasonable grounds" to assert a medical negligence claim. § 766.203(2). As part of that presuit investigation, the claimant must ascertain that there are reasonable grounds to believe that the defendants named in the litigation were negligent in the claimant's care and treatment and that the negligence resulted in the claimant's injuries. § 766.203(2)(a), (b).

A medical malpractice claimant must serve a prospective defendant with a notice of intent to initiate medical negligence litigation. § 766.106. When that notice of intent is mailed to the prospective defendant, it must include corroboration of the claimant's reasonable investigation into the claim. § 766.203(2). The required corroboration "shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(6), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence." *Id.*

Since a prospective medical malpractice claimant is required to conduct a "reasonable investigation," Chapter 766 requires that a medical provider to whom a plaintiff directs a demand for medical records must cooperate in that investigation

4

by providing medical records on request. "Copies of any medical record relevant to any litigation of a medical negligence claim or defense shall be provided to a claimant or a defendant, or to the attorney thereof, at a reasonable charge within 10 business days of a request for copies." § 766.204(1), Fla. Stat. (2024).

If a claimant demands medical records under section 766.204(1) and the party who receives that demand fails to provide the records, section 766.204(2) creates a penalty for the non-compliant party. *See* § 766.204(2). The "[f]ailure to provide copies of such medical records . . . shall constitute evidence of failure ***of that party*** to comply with good faith discovery requirements and shall waive the requirement of written medical corroboration by the requesting party." § 766.204(2) (emphasis added).

After this mandatory presuit investigation is complete and before a complaint for medical negligence can be filed, the claimant "shall notify each prospective defendant" of the claimant's intent to initiate a medical malpractice action using one of the statutorily-specified "verifiable means." § 766.106(2)(a). Among other things, the notice of intent "must include, if available, a list of all known health care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period before the alleged act of negligence who treated or evaluated the claimant, copies of

5

all of the medical records relied upon by the expert in signing the affidavit," and a statutorily-provided form. § 766.106(2)(c).

The Legislature created statutorily-mandated consequences for failure to comply with the reasonable investigation requirements of Chapter 766. Section 766.206(1) provides a mechanism for "any party" to move the circuit court for a determination "whether the opposing party's claim or denial rests on a reasonable basis." § 766.206(1), Fla. Stat. (2024). And section 766.206(2) provides that "[i]f the court finds that the notice of intent to initiate litigation mailed by the claimant does not comply with the reasonable investigation requirements of ss. 766.201-766.212, including a review of the claim and a verified written medical expert opinion by an expert witness as defined in s. 766.202, or that the authorization accompanying the notice of intent required under s. 766.1065 is not completed in good faith by the claimant, the court *shall* dismiss the claim." § 766.206(2), Fla. Stat. (2024) (emphasis added).

## IV.

The Providers' motion argued that (1) the complaint purported to contain a certificate of counsel as required by section 766.203, but the certificate did not state that any investigation was done pursuant to section 766.104; (2) the notice of intent was dated for February 13, 2023 but was not served on the Providers until February 20, 2024; (3) the notice of intent did not include a verified medical expert opinion

6

as required by sections 766.106 and 766.203; (4) Ms. McLean did not serve a proper medical record request on all defendants, but she instead claims that all defendants waived the verified medical expert requirement by failing to timely respond to the records request; (5) the Providers did not waive the requirement of a corroborating verified medical expert opinion pursuant to section 766.203; and, therefore (6) the notice of intent did not comply with the presuit requirements and must be dismissed.

The Providers also alleged that, during the presuit period, they served Ms. McLean with informal discovery seeking copies of her alleged requests for records, proof of service of those requests, and evidence of her reasonable investigation. The Providers asserted that, although Ms. McLean stated that copies were attached when she responded to those informal requests, in fact no copies were attached. In their motion, the Providers further argued that they served Ms. McLean with a presuit denial accompanied by a verified written affidavit of Sharon Coffey, RN and detailed the defects in Ms. McLean's presuit compliance. The motion stated that before the expiration of the statute of limitations, Ms. McLean neither responded to the Providers' denial nor cured the statutory presuit defects the Providers identified.

When the Providers moved to dismiss Ms. McLean's complaint under section 766.206(2), the trial court found that CASC waived the requirement that a corroborating affidavit be served contemporaneously with the notice of intent. The waiver was predicated on CASC's failure to provide medical records within ten days

7

of the request under section 766.204(2). The court concluded that "under the circumstances, the waiver extends to Defendant Eric Bystrak, LPN."

V.

Compliance with medical malpractice statutory presuit requirements is a mandatory condition precedent to filing a medical malpractice action, and failure to timely comply with the notice of intent requirements "requires the dismissal of [the] action." *Williams v. Campagnulo*, 588 So. 2d 982, 982 (Fla. 1991); § 766.206 ("If the court finds that the notice of intent to initiate litigation mailed by the claimant does not comply with the reasonable investigation requirements of ss. 766.201-766.212, including a review of the claim and a verified written medical expert opinion by an expert witness as defined in s. 766.202, or that the authorization accompanying the notice of intent required under s. 766.1065 is not completed in good faith by the claimant, the court shall dismiss the claim.").

Ms. McLean did not serve Nurse Bystrak with a request for records under section 766.204(1). Yet the trial court ruled that Nurse Bystrak bore the statutory consequences for non-compliance with this section. The court arrived at this conclusion because Ms. McLean argued that the statutory consequences outlined in section 766.204(2) fairly applied to Nurse Bystrak because Nurse Bystrak "bore a legal relationship" with CASC and AmSurg, so CASC and AmSurg's failure to timely comply should be imputed to Nurse Bystrak. Of course, Ms. McLean

8

acknowledges that the "legal relationship" language appears nowhere in the statute; that language comes from Florida Rule of Civil Procedure 1.650. Indeed, section 766.204(2) makes clear by its own terms that a failure to comply under 766.204(2) "shall constitute evidence of failure *of that party* to comply." § 766.204(2) (emphasis added). But the net effect of the trial court's ruling in favor of Ms. McLean on this issue is that Ms. McLean—who, again, *never served Nurse Bystrak with a request for records*—was relieved of the obligation to provide Nurse Bystrak with that which the statute otherwise required her to provide: written medical corroboration of her claim, as part of the presuit notice of intent.

Nurse Bystrak contends that the trial court's ruling departed from the essential requirements of the law, and we agree. Now, Ms. McLean is correct that section 766.204(2) provides that a failure to respond to a request for records served under section 766.204(1) "shall constitute evidence of failure *of that party* to comply with good faith discovery requirements and shall waive the requirement of written medical corroboration by the requesting party." § 766.204(2) (emphasis added). And we do not disturb the trial court's finding that Ms. McLean served a request for records on CASC and AmSurg and that both of those providers failed to timely respond. Nor do we see error in the court's conclusion that a failure of those two providers to respond to the request for records, if it occurred, would have operated as a waiver of Ms. McLean's obligation to provide *them* with written medical

9

corroboration. However, the trial court departed from the essential requirements of the law when it found that the waiver by CASC and AmSurg extended to Nurse Bystrak.

The language of section 766.204(2) clearly establishes that the waiver provisions found in subsection (2) are intended to penalize a "failure of that party" who fails to comply with subsection (1). Since Nurse Bystrak was never served with a request under subsection (1), subsection (2) does not apply to him. It is not necessary to conduct any complicated analysis of the text, because simply looking at the ordinary meaning of the words makes it clear: the failure to respond to a medical records request under section 766.204(1) subjects "that party" to the consequences outlined in section 766.204(2). § 766.204(2). Indeed, more than twenty years ago our sister court concluded as much in *Tapia-Ruano v. Alvarez*, 765 So. 2d 942, 943 (Fla. 3d DCA 2000), which rightly held that a hospital's failure to provide medical records could not be imputed to a doctor. Our reading of the statute is consistent with *Tapia-Ruano*'s holding.

We categorically reject Ms. McLean's argument that the Florida Supreme Court's adoption of a rule of civil procedure has the operation of rewriting or expanding the substantive law enacted in a statute. Essentially, Ms. McLean contends that when the Florida Supreme Court adopted rule 1.650, it rewrote the statute and expanded the waiver provisions of section 766.204(2). Looking at the

text of section 766.204(2), it provides that when a party fails to comply with the requirement to provide medical records within ten business days of a request under subsection (1), subsection (2) provides that the failure to timely comply constitutes "evidence of failure of that party to comply with good faith discovery requirements," and that party "shall waive the requirement of written medical corroboration by the requesting party." Ms. McLean argues that, because the Florida Supreme Court adopted language in rule 1.650 that does not track the statute, the rule allows for notices to one prospective defendant to operate as notices to "any other prospective defendant who bears a legal relationship to the prospective defendant served with the notice," and ought to be read as expanding the scope of a waiver under section 766.204(2). Under Ms. McLean's argument, the adoption of rule 1.650 would expand the waiver beyond "that party" who failed to comply with subsection (1) to "any other prospective defendant who bears a legal relationship" with the non-compliant party.

The first problem with Ms. McLean's argument is that rule 1.650 is inapplicable here. The plain language of the rule confines its applicability to the service of a notice of intent to initiate litigation and the informal discovery that follows the issuance of that notice. *See* Fla. R. Civ. P. 1.650(b), (c). Ms. McLean's contention is that CASC and AmSurg's presuit failure relates to an earlier stage in the presuit process not governed by the rule. *See, e.g.*, *Brundage v. Evans*, 295 So.

11

3d 300, 305 (Fla. 2d DCA 2020) (discussing difference between information gathered during presuit investigation before service of the notice of intent under section 766.204(2) and informal discovery occurring after service of the notice of intent under section 766.106(6)).

Even if we believed rule 1.650 applied, Ms. McLean's contention simply misapprehends the separation of powers in Florida's Constitution, the Florida Legislature's policy-making role, the nature of legislative power, and the nature of the Florida Supreme Court's constitutional power to make rules. Under the Florida Constitution, "the legislative power of the state" is vested in the Florida Legislature. Art. III, § 1, Fla. Const. The legislature has the power to make law that, once signed into law by the Governor, expresses the public policy of our state. *See* art. III, § 8(a), Fla. Const. ("Every bill passed by the legislature shall be presented to the governor for approval and shall become a law if the governor approves and signs it, or fails to veto it within seven consecutive days after presentation.").

The legislative power is defined as "[t]he power to make laws and alter them; a legislative body's exclusive authority to make, amend, and repeal laws." *Legislative Power*, Black's Law Dictionary 1081 (12th ed. 2024). Like many statutes, Chapter 766 reflects the legislature's policy judgment about the appropriate balancing of the competing interests of medical malpractice plaintiffs and defendants. *See* Art. I, § 2, Fla. Const. (defining the rights to "acquire, possess, and

12

protect property" as "Basic rights" the Florida Constitution exists to protect); Art. I, § 21, Fla. Const. ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."); Art. I, § 22, Fla. Const. ("The right of trial by jury shall be secure to all and remain inviolate."); Art. X, §§ 25, 26, Fla. Const. (relating to adverse medical incidents and medical malpractice actions).

Except where the people of Florida have specifically authorized it in the constitution, power-sharing between branches is not permitted because "[n]o person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." Art. II, § 3, Fla. Const. So while the judicial power granted to the Florida Supreme Court in our constitution expressly includes the power to "adopt rules for the practice and procedure in all courts," Art. V, § 2(a), Fla. Const., the Florida Supreme Court itself recognizes that a rule of procedure that is created to implement statutory law should not be read to rewrite or defeat the statute the rule was designed to implement. *Kuhajda v. Borden Dairy Co. of Ala., LLC*, 202 So. 3d 391, 395–96 (Fla. 2016) ("The procedural rule should no more be allowed to trump the statute here than the tail should be allowed to wag the dog. A procedural rule should not be strictly construed to defeat a statute it is designed to implement."). Consistent with the Florida Supreme Court's constitutional power to make rules for practice and procedure in the courts, rule

13

1.650 reflects a rule of procedure that governs the service of the presuit notice required under the statute. The rule itself does not amend the carrot-and-stick policy judgments reflected in sections 766.204(1) and (2).

PETITION GRANTED.

TRAVER, C.J. and NARDELLA, JJ., concur.


Jamie Billotte Moses, of MMPO Defense – Florida, Orlando, for Petitioners.

Terry P. Roberts, of Fischer Redavid, PLLC, Hollywood, for Respondent.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED. ANY MOTIONS FOR
REHEARING ARE DUE TEN DAYS FROM THE DATE OF THE OPINION
AND ANY RESPONSES ARE DUE FIVE DAYS LATER.